UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,
as assignee and subrogee of
FLORIDA EDUCATION ASSOCIATION,

       Plaintiff,

v.                                     Case No. 3:20-cv-11-J-34MCR

 MILDRED K. GRIFFIS a/k/a Kelly Griffis,

       Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

    **THIS CAUSE** is before the Court on Plaintiff's Motion for Final Default Judgment ("Motion") (Doc. 20).  Although the Motion was served on Defendant on April 9, 2020 (*see id.* at 4), to date, Defendant has not filed a response and the time for filing a response has passed; accordingly, the Motion will be treated as unopposed.  For the reasons stated herein, the undersigned recommends that the Motion be **GRANTED**.

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations."  Fed.R.Civ.P. 72(b)(2).  "A party may respond to another party's objections within 14 days after being served with a copy."  *Id.*  A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made.  *See* Fed.R.Civ.P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; M.D. Fla. R. 6.02.

## I.     Background

On January 8, 2020, Plaintiff, National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), as assignee and subrogee of Florida Education Association ("FEA"), commenced this action against Defendant, Mildred K. Griffis a/k/a Kelly Griffis ("Griffis"), by filing a Complaint in this Court. (Doc. 1.)  On January 9, 2020, the Court entered an Order directing Plaintiff to provide, no later than January 23, 2020, sufficient information so that the Court could determine whether it has jurisdiction over this action.  (Doc. 3.)  On January 13, 2020, Plaintiff filed a Notice of Compliance with the Court's January 9, 2020 Order and an Amended Complaint, establishing the Court's subject-matter jurisdiction over this action.  (Docs. 7, 8, 10.)

The Amended Complaint alleges that between 2009 and 2015, Defendant, in her position as an executive (and later the President) of Clay County Education Support Personnel Association ("CCESPA"), misappropriated at least $73,600.06 from the FEA for her personal benefit.  (Doc. 7 at ¶¶ 7-8, 12.)  Specifically, Defendant "used her access to CCESPA's internal financial instruments, including its VyStar Credit Union and Community First Credit Union bank accounts, to obtain cash withdrawals and reimbursements for personal expenses."  (*Id.* at ¶ 9.)  In addition, Defendant "submitted false and fraudulent invoices for mileage and expense reimbursements to which she knew she was not entitled."  (*Id.* at ¶ 10.)  Defendant also "purchased a vehicle with CCESPA funds for her daughter."  (*Id.* at ¶ 11; *see also* Doc. 20-2 at 24.)  The allegations

of theft in the Amended Complaint are substantiated by the documents attached to the Certification of James S. Myers filed in support of the Motion.  (*See* Doc. 20-2.)

The Amended Complaint further alleges that Defendant was terminated after the CCESPA and the FEA discovered her theft on or about June 9, 2015. (Doc. 7 at ¶ 13.)  Pursuant to a Labor Organization Bond policy, Plaintiff indemnified the FEA for the loss sustained as a result of Defendant's theft.  (*Id.* at ¶ 14; *see also* Doc. 20-1 at 2.)  As a result, Plaintiff became subrogated to the FEA, and the FEA assigned to Plaintiff all rights, claims, and causes of action it had against Defendant.  (Doc. 7 at ¶ 15; *see also* Doc. 20-1 at 2; Doc. 20-2 at 3.)

On January 27, 2020, the Amended Complaint was served on Defendant via substitute service on Brittany Griffis at Defendant's usual place of abode. (Doc. 17.)  On February 24, 2020, Plaintiff filed a Motion for Clerk's Default due to Defendant's failure to appear and file a responsive pleading in this case.  (Doc. 18.)  On February 27, 2020, the Clerk entered a default against Defendant. (Doc. 19.)

On April 9, 2020, Plaintiff filed the present Motion, seeking a final default judgment against Defendant in the amount of $220,800.18.[2]  (Doc. 20.)  On April 21, 2020, the Court entered an Order taking the Motion under advisement and

---

[2] Although both the Amended Complaint and the Motion request treble damages in the amount of $220,800.13, the correct treble damages amount is $220,800.18 ($73,600.06 x 3).

directing Plaintiff to file, on or before May 6, 2020, an affidavit in compliance with the requirements of the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. App'x § 521(b).  (Doc. 21.)  On April 28, 2020, Plaintiff filed the Declaration of James S. Myers in support of the Motion and attached a status report from the Department of Defense Manpower Data Center.  (Docs. 22 & 22-1.)  The Motion is now ripe for review.

## II.    Standard

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment.  First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court is authorized to enter a clerk's default against the defendant.  *See* Fed.R.Civ.P. 55(a).  Second, after receiving the clerk's default, the plaintiff must apply to the court for a default judgment, except in limited circumstances when application may be made to the clerk.  *See* Fed.R.Civ.P. 55(b).  A default judgment may be entered "against a defendant who never appears or answers a complaint, for in such circumstances the case never has been placed at issue."  *Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1134 (11th Cir. 1986).

All well-pleaded allegations of fact are deemed admitted upon entry of default, but before entering a default judgment, the court must ensure that it has jurisdiction over the claims and that the complaint adequately states a claim for which relief may be granted.  *See Nishimatsu Costr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also GMAC Commercial Mortg. Corp. v.*

4

*Maitland Hotel Assocs., Ltd.*, 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002). A sufficient basis must exist in the pleadings for the judgment entered. *See Nishimatsu*, 515 F.2d at 1206. A defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *See id.*; *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (stating that "facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment").

Rule 8 provides that a complaint must include (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for relief. *See* Fed. R. Civ. P. 8(a). A complaint meets the requirements of Rule 8, if in light of the nature of the action, the complaint provides factual allegations, which are assumed to be true, sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

Further, "the party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (per curiam).

> Subject matter jurisdiction in a federal court may be based upon
> federal question jurisdiction or diversity jurisdiction.  28 U.S.C. §§
> 1331, 1332.  Diversity jurisdiction exists where the plaintiffs and
> defendants are citizens of different states, and the amount in
> controversy exceeds $75,000.  . . .  Absent diversity of citizenship, a
> plaintiff must present a substantial federal question in order to
> invoke the district court's jurisdiction.

*Walker v. Sun Trust Bank of Thomasville, GA*, 363 F. App'x 11, 15 (11th Cir.

2010) (per curiam) (internal quotation marks omitted).

The Court must also ensure that the defaulting defendant was properly

served.  "It is axiomatic that absent good service, the Court has no *in personam*

or personal jurisdiction over a defendant."  *Tacoronte v. Tate & Kirlin Assocs.*,

No. 6:13-cv-331-Orl-37DAB, 2013 WL 5970720, *4 (M.D. Fla. Nov. 8, 2013)

(adopting Aug. 6, 2013 report and recommendation) (internal citations omitted).

"Without personal service of process in accordance with applicable law, a federal

court is without jurisdiction to render a personal judgment against a defendant."

*Id.* (citing *Royal Lace Paper Works, Inc. v. Pest-Guard Prods., Inc.*, 240 F.2d

814, 816 (5th Cir. 1957)[3]).

Further, when a plaintiff seeks entry of a default judgment against an

individual defendant, the plaintiff must also comply with § 521 of the SCRA,

which requires, *inter alia*, the filing of an affidavit:

> (A) stating whether or not the defendant is in military service and
> showing necessary facts to support the affidavit; or

---

[3] All Fifth Circuit decisions entered before October 1, 1981 were adopted by the
Eleventh Circuit as binding precedent.  *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th
Cir. 1981) (en banc).

(B) if the plaintiff is unable to determine whether or not the defendant is in military service, stating that the plaintiff is unable to determine whether or not the defendant is in military service.

50 U.S.C. App'x § 521(b)(1).

### III.   Discussion

#### A.   Preliminary Matters

The Amended Complaint adequately alleges diversity jurisdiction pursuant to 28 U.S.C. § 1332.  (*See* Docs. 7, 10.)  Specifically, it alleges that Plaintiff is a Pennsylvania corporation with a principal place of business in New York, New York; Defendant is a citizen of Clay County, Florida; and the amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees. (Doc. 7 at ¶¶ 1, 3-4.)  Based on these allegations, which are deemed admitted, Plaintiff has adequately established that the Court has subject matter jurisdiction over this action.[4]

In addition, Defendant was served with process on January 27, 2020 via substitute service on Brittany Griffis at Defendant's usual place of abode.  (Doc. 17.)  Because the service of process is proper under Fla. Stat. § 48.031(1)(a), and Defendant has failed to appear in this action, a default was properly entered against Defendant.

---

[4] Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b), because Defendant resides in this District and the events giving rise to Plaintiff's claim occurred in this District.  (Doc. 7 at ¶ 2.)

Further, Plaintiff has submitted the Declaration of Mr. Myers and a status report from the Department of Defense Manpower Data Center in compliance with § 521 of the SCRA.  (Docs. 22 & 22-1.)  In the Declaration, Mr. Myers states that to the best of his knowledge and belief, "Defendant is not on active duty in the Armed Forces of the United States, under a call to active service in the National Guard, [and is not] a commissioned officer of the Public Health Service or the National Oceanic and Atmospheric Administration in active service, as those terms are defined under 50 U.S.C. § 521 of the Servicemembers Civil Relief Act of 2003."  (Doc. 22 at ¶ 3.)  This Declaration is based on a search Mr. Myers "personally performed in the data banks of the Department of Defense Manpower Data Center," which returned a Status Report indicating that, as of April 21, 2020, Defendant was not on active duty as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).  (Doc. 22-1.)  The undersigned recommends that the Declaration and accompanying documentation satisfy the requirements of § 521 of the SCRA.

### B.    Liability and Damages[5]

The Amended Complaint adequately states a claim for relief against Defendant.  It includes one count for civil theft pursuant to Section 812.014 of the

---

[5] Although the Amended Complaint sought "treble damages[] together with interest, costs and reasonable attorneys' fees" (Doc. 7 at 4), the Motion seeks treble damages only (*see* Doc. 20).

Florida Statutes.  (Doc. 7.)  To state a claim for civil theft under Florida law,

Plaintiff must allege an injury resulting from Defendant's violation of Florida's

criminal theft statute, § 812.014.[6]  *United Techs. Corp. v. Mazer*, 556 F.3d 1260,

1270 (11th Cir. 2009); *see also Palmer v. Gotta Have It Golf Collectibles, Inc.*,

106 F. Supp. 2d 1289, 1303 (S.D. Fla. 2000) (stating that "a cause of action for

civil theft 'derives from two statutory sources: the criminal section setting forth the

elements of theft, and the civil section granting private parties a cause of action

for a violation of the criminal section'") (internal citations omitted)).  In other

words, Plaintiff must allege that Defendant:

> (1) knowingly (2) obtained or used, or endeavored to obtain or use,
> [Plaintiff's] property with (3) 'felonious intent' (4) either temporarily or
> permanently to (a) deprive [Plaintiff] of its right to or a benefit from
> the property or (b) appropriate the property to [Defendant's] own use
> or to the use of any person not entitled to the property.

---

[6] Section 812.014(1) provides:
(1) A person commits theft if he or she knowingly obtains or uses, or
endeavors to obtain or to use, the property of another with intent to, either
temporarily or permanently:
(a) Deprive the other person of a right to the property or a benefit from the
property.
(b) Appropriate the property to his or her own use or to the use of any
person not entitled to the use of the property.
Fla. Stat. § 812.014(1).  "Obtains or uses" means any manner of:
(a) Taking or exercising control over property.
(b) Making any unauthorized use, disposition, or transfer of property.
(c) Obtaining property by fraud, willful misrepresentation of a future act, or
false promise.
(d) 1. Conduct previously known as stealing; larceny; purloining;
abstracting; embezzlement; misapplication; misappropriation; conversion;
or obtaining money or property by false pretenses, fraud, or deception; or
2. Other conduct similar in nature.
Fla. Stat. § 812.012(3).  "[T]he term 'endeavors' means an overt act manifesting criminal
intent, rather than merely the formulation of a mental intent."  *Florida v. Allen*, 362
So.2d 10, 12 (Fla. 1978) (per curiam).

*Mazer*, 556 F.3d at 1270 (citing Fla. Stat. § 812.014(1) (Florida's criminal theft

statute); Fla. Stat. § 772.11 (Florida's statute providing a civil remedy for theft or

exploitation)[7]; *Almeida v. Amazon.com, Inc.,* 456 F.3d 1316, 1326–27 (11th Cir.

2006); & *Gersh v. Coffman,* 769 So.2d 407, 409 (Fla. Dist. Ct. App. 2000) ("In

order to establish an action for civil theft, the claimant must prove the statutory

elements of theft, as well as criminal intent.")); *see also Healy v. Suntrust Serv.

Corp.*, 569 So.2d 458, 460 (Fla. Dist. Ct. App. 1990) ("Theft is a specific intent

crime, requiring actual knowledge on the part of the defendant.").

Here, the Amended Complaint alleges that Defendant, in her position as

an executive of the CCESPA, "intentionally stole the FEA's funds" of at least

$73,600.06, and "converted such funds to her personal benefit by submitting

false and fraudulent reimbursement requests to the FEA," by purchasing "a

vehicle with CCESPA funds for her daughter," and by using "her access to

CCESPA's internal financial instruments . . . to obtain cash withdrawals and

reimbursements for personal expenses."  (Doc. 7 at ¶¶ 7-12, 18.)  Further,

---

[7] Section 772.11(1) provides in relevant part:
Any person who proves by clear and convincing evidence that he or she
has been injured in any fashion by reason of any violation of ss. 812.012-
812.037 or s. 825.103(1) has a cause of action for threefold the actual
damages sustained and, in any such action, is entitled to minimum
damages in the amount of $200, and reasonable attorney's fees and court
costs in the trial and appellate courts.  Before filing an action for damages
under this section, the person claiming injury must make a written demand
for $200 or the treble damage amount of the person liable for damages
under this section.
Fla. Stat. § 772.11(1).

Defendant "intended to permanently deprive the FEA of its funds and to keep these funds for [her] own use and for the benefit of others, with felonious intent and within the meaning of Section 812.014 of the Florida Statutes." (*Id.* at ¶ 19.) Based on these allegations, which are deemed admitted, and the documents attached to the Motion which further corroborate Plaintiff's allegations, Plaintiff has stated a claim for civil theft against Defendant.[8]

Plaintiff demands judgment in its favor and against Defendant in the amount of $220,800.18, which represents treble damages for the misappropriated funds in the amount of $73,600.06. (Doc. 7 at 4; *see also* Doc. 20-1 at 2-3 (stating that after an investigation of Defendant's conduct revealed that she had misappropriated at least $73,600.06 from the FEA, Plaintiff made a

---

[8] As alleged in the Amended Complaint and as stated in the Affidavit of Judy E. Perez in support of the Motion, Plaintiff is the assignee and subrogee of the FEA. (Doc. 7 at ¶¶ 14-15; *see also* Doc. 20-1 at 2 (stating that Plaintiff became the assignee and subrogee of the FEA as a result of an Assignment and Release executed on July 18, 2018 between Plaintiff and the FEA, pursuant to which Plaintiff agreed to pay $73,600.06 in consideration for an assignment and transfer of any and all claims available to the FEA, which arise out of Defendant's misappropriation of the FEA's funds).) Because the well-pleaded allegations in the Amended Complaint are deemed admitted by virtue of Defendant's default, National Union, as assignee and subrogee of the FEA, is entitled to judgment against Defendant.

Plaintiff initially filed only the Assignment and Release, but later, pursuant to the Court's July 22, 2020 Order, it also filed the policy referenced therein (Policy No.: 01-485-4696). (Doc. 20-1 at 4; Doc. 24-1.) The Assignment and Release lists Plaintiff National Union as "the [insurance] [c]ompany," the National Education Association as the insured, the FEA under "State," and the CCESPA under "Local." (*Id.*) The policy confirms that Plaintiff National Union is the insurer and that the National Education Association is the insured, but endorsement one to the policy also adds as additional insureds, *inter alia*, the FEA, all state affiliates of the National Education Association, and any local, district, county, or other similar associations affiliated with such state affiliates and/or the National Education Association. (Doc. 24-1 at 16.)

claim payment for that amount, which includes: $7,358.73 for mileage and per diem expenses between 2009 and 2012; $4,704.09 for personal expenses at Best Buy; $1,070.24 for a purported stipend and registration expenses that Defendant did not incur and for which reimbursement was not permitted; $4,307.94 for an additional stipend, per diem and registration expenses that Defendant did not incur and for which reimbursement was not permitted; $2,499.40 for a stipend and registration expenses that Defendant did not incur and for which reimbursement was not permitted; $35,633.75 for purported travel expenses and cash withdrawals that Defendant did not incur and for which reimbursement was not permitted; and $18,025.92 for additional miscellaneous expenses and cash withdrawals that Defendant did not incur and for which reimbursement was not permitted).)

Before filing an action for threefold the actual damages sustained as a result of any violation of Sections 812.012-812.037 or 825.103(1), "the person claiming injury must make a written demand for $200 or the treble damage amount of the person liable for damages." Fla. Stat. § 772.11(1). Here, the Amended Complaint alleges that on July 30, 2019, Plaintiff made a written demand for payment of $73,600.06 to Defendant, pursuant to Fla. Stat. §§ 772.11 and 812.014, but Defendant failed to reimburse Plaintiff for the financial loss caused by her theft. (Doc. 7 at ¶¶ 20-21.) These allegations are corroborated by the documents attached to the Certification of Mr. Myers filed in support of the Motion. (*See* Doc. 20-2 at 1-4 (also advising Defendant in the July

30, 2019 letter that "pursuant to Section 772.11 of the Florida Statutes, National Union may bring an action for civil theft in the amount of $220,800.18 if this matter is not resolved amicably"); *see also id.* at 47 (advising Defendant again, in a letter dated September 5, 2019, that Plaintiff had paid a claim for $73,600.06 arising out of Defendant's theft and demanding reimbursement).)  Because Plaintiff has adequately alleged (and has shown) compliance with the statutory requirements for obtaining treble damages pursuant to Fla. Stat. § 772.11(1), the undersigned recommends that Plaintiff, as assignee and subrogee of the FEA, be awarded such damages in the amount of $220,800.18.

Accordingly, it is respectfully **RECOMMENDED** that:

1.      The Motion (**Doc. 20**) be **GRANTED**.

2.      The Clerk of Court be **DIRECTED** to enter a default judgment in favor of Plaintiff, National Union Fire Insurance Company of Pittsburgh, PA, as assignee and subrogee of the Florida Education Association, and against Defendant, Mildred K. Griffis a/k/a Kelly Griffis, for treble damages in the amount of $220.800.18.

3.      The Clerk of Court be further **DIRECTED** to terminate any pending motions and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on July 30, 2020.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Hon. Marcia Morales Howard
United States District Judge

Counsel of Record

Mildred K. Griffis
5240 Mallard Road
Middleburg, FL 32068